# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
## COURT FILE NO.: _____

| | |
|---|---|
| Charles Reed and Jeannie Reed,<br><br>      Plaintiffs,<br><br>v.<br><br>National Credit Services, Inc.,<br>dba Northland Credit Control,<br>and Mike Morris<br>            Defendants. | **COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and out of the invasions of each Plaintiff's personal and financial privacy by these Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiffs.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiffs reside here, and Defendants transact business here.

## PARTIES

4. Plaintiff Charles Reed (hereinafter "Charles") is a natural person who resides in the City of Buffalo, County of Wright, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Plaintiff Jeannie Reed (hereinafter "Jeannie") is a natural person who resides in the City of Buffalo, County of Wright, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6. Defendant National Credit Services, Inc., dba Northland Credit Control, (hereinafter "Defendant NCC") is a collection agency operating from an address of 3617 Vera Cruz Ave N, Minneapolis, Minnesota 55422, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7. Defendant Mike Morris (hereinafter "Defendant Morris") is a natural person who was employed at all times relevant herein by Defendant NCC as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), but whose true name is not yet known.

## FACTUAL ALLEGATIONS

8. On or around 2003, Plaintiff Charles Reed incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely,

unpaid school tuition from Minot State University, in the approximate amount of $2,800 which went into default sometime around 2003.

9. Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiffs.

*August 5, 2009 Call from Defendant Morris to Plaintiff Charles Reed*

10. On or about August 5, 2009, Defendant NCC's collector, Defendant Morris, contacted Plaintiff Charles Reed by telephone in an effort to collect this debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

11. On this occasion, Defendant Morris called Charles at work and demanded immediate payment from him on this debt.

12. Charles had repeatedly told Defendants not to call him at work, as he could not accept these calls and his employer did not permit him to take collection calls.

13. During this collection call, Defendant Morris was rude and abrasive to Charles and told him that he was always lying to him.

14. Defendant Morris told Charles that he did not believe that Charles really wanted to work things out on this debt and that he had no intention of getting anything worked out.

15. Defendant Morris told Charles that he was out of patience and "done" with Plaintiffs, and was not going to give them any more time to make arrangements on this loan.

16. Defendant Morris then demanded Charles's new home phone number, which Charles had not yet memorized.

17. Charles told Defendant Morris that he needed to call his wife's cell phone to get the new phone number since he did not remember it.

18. Defendant Morris accused Charles of being a liar because everyone should know his or her home telephone number.

19. Defendant Morris then told Charles that he was going to have the Sherriff show up at Charles's workplace and embarrass him there.

20. This was the second time that Defendant Morris had made this threat to Charles in a collection call.

21. Defendant Morris was aggressive, abusive, and harassing to Charles throughout this collection call.

22. These communications by Defendant Morris on this occasion were false, deceptive, harassing, and abusive attempts to collect a debt done in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(3), 1692d, 1692d(1),

1692d(2), 1692d(5), 1692e, 1692e(1), 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692e(11), and 1692f, amongst others.

*August 5, 2009 Call Between Defendant Morris and Plaintiff Jeannie Reed*

23. Later that same day, on August 5, 2009, Plaintiff Jeannie Reed called Defendant Morris to try to work something out of this debt.

24. Defendant Morris told Jeannie that he was expecting a call from her since he had already spoken to Charles that day.

25. Jeannie had just spoken to her husband, Charles, about Defendant Morris's earlier call to him.

26. Jeannie was really frightened that her husband was in trouble and feared what Defendants might try to do to Charles at his workplace.

27. Plaintiff Jeannie Reed was scared after speaking with Charles and was scared about the threat to Charles at his workplace.

28. After identifying who she was, Defendant Morris demanded payment on this debt from Jeannie which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

29. Defendant Morris told Jeannie that he was done wasting time on the Plaintiffs and that anything they had told him was a lie.

30. Defendant Morris then told Jeannie that he had already told Charles that he was going to have the Sherriff go to Charles' workplace, serve him with

papers, and arrest him because that was obviously what Plaintiffs wanted Defendant NCC to do.

31. Jeannie was very scared by this comment and told Defendant that she did not think that Defendant Morris could have anyone arrested.

32. Defendant Morris immediately responded by saying that he in fact could have Charles arrested because this obligation was a "federal" debt involving the government.

33. Defendant Morris then ominously said that if the Plaintiffs had just worked with him, that none of this would have happened to them.

34. Defendant Morris repeated that he did not believe anything that Plaintiffs said to him and, from their actions, it was clear that what Plaintiffs wanted was for Charles to be arrested.

35. Defendant Morris said that he was done arguing the point with Jeannie and that he had nothing further to say, and thereafter rudely hung up the call.

36. Defendant Morris was extremely rude, abusive, hostile and threatening throughout this collection call.

37. Plaintiff Jeannie Reed was traumatized and terrorized by Defendant Morris's illegal threats of arrest and believed that her husband, Charles, would be imminently arrested at his workplace, a busy home improvement store.

38. Plaintiffs had three small children that would be left destitute if they did not have their father's income, and Jeannie feared what would happen to her family if Charles were arrested for this debt.

39. Plaintiffs were also on economic aid in the form of energy assistance, medical assistance, and WIC at the time of these abusive collection calls and were struggling just to make ends meet day-to-day.

40. Despite these explicit threats made by Defendants, no lawsuit or papers have ever been served on Plaintiffs for this debt and no Sherriff has ever arrived to arrest Charles.

41. These communications by Defendant Morris on this occasion were false, deceptive, harassing, and abusive attempts to collect a debt done in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(3), 1692d, 1692d(1), 1692d(2), 1692d(5), 1692e, 1692e(1), 1692e(2), 1692e(4), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692e(11), and 1692f, amongst others.

### *Summary*

42. All of the above-described collection communications made to Plaintiffs by Defendant Morris, and other collection employees employed by Defendant NCC, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to those mentioned herein, amongst others.

43. The above-detailed conduct by these Defendants of harassing Plaintiffs in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA, as well as an invasion of Plaintiffs' privacy by intrusion upon seclusion which resulted in actual damages to Plaintiffs.

44. Defendants' illegal abusive collection communications as more fully described herein were the direct and proximate cause of severe emotional distress on the part of Plaintiffs and caused them unnecessary personal strain in their work, marriage and family life.

45. Plaintiffs have suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy at both home and work.

### *Respondeat Superior Liability*

46. The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant NCC who communicated with each Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant NCC.

47. The acts and omissions by Defendant Morris and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant NCC in collecting consumer debts.

48. By committing these acts and omissions against each Plaintiff, these individual Defendants and these other debt collectors were motivated to benefit their principals, Defendant NCC.

49. Defendant NCC is therefore liable to each Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota tort law, in their attempts to collect this debt from each Plaintiff.

## TRIAL BY JURY

50. Each Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

51. Each Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. The foregoing acts and omissions of each Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to each Plaintiff.

53. As a result of each Defendant's violations of the FDCPA, each Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant herein.

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

54. Each Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

55. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute to** the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

56. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors, albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

57. Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of each Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded each Plaintiff's privacy.

58. Defendants and their agents intentionally and/or negligently caused emotional harm to each Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon each Plaintiff's rights to privacy.

59. Each Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

60. The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against each Plaintiff, resulted in multiple intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

61. As a result of such intrusions and invasions of privacy, each Plaintiff is entitled to actual damages in an amount to be determined at trial from each Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiff prays that judgment be entered against each Defendant as follows:

### **COUNT I.**

### **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

### **15 U.S.C. § 1692 et seq.**

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each Defendant and for each Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each Defendant and for each Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each Defendant and for each Plaintiff;

### **COUNT II.**

### **INVASION OF PRIVACY BY INTRUSION UPON SECLUSION AND BY REVELATION OF PRIVATE FINANCIAL FACTS TO THIRD PARTY**

- for an award of actual damages from each Defendant for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasions of privacy in an amount to be determined at trial and for each Plaintiff; and

- for such other and further relief as may be just and proper.

        Respectfully submitted,

Dated: February 16, 2010        **BARRY & SLADE, LLC**

        By:  **s/Peter F. Barry**
        Peter F. Barry, Esq.
        Attorney I.D.#0266577
        2021 East Hennepin Avenue, Suite 195
        Minneapolis, Minnesota 55413-1773
        Telephone:  (612) 379-8800
        Facsimile: (612) 379-8810
        pbarry@lawpoint.com

pfb/ra        **Attorney for Plaintiff**